UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TONI ANN VAN CLEAVE, | ) | CIV. 12-4202-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER AFFIRMING |
| CAROLYN W. COLVIN, | ) | DECISION OF COMMISSIONER |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Toni Ann Van Cleave, seeks review of the decision of the

Commissioner of Social Security denying her claims for disability insurance

benefits and supplemental security income.[1] The Commissioner opposes the

motion and requests that the court affirm the decision. The court affirms.

**PROCEDURAL HISTORY**

In June of 2009, Van Cleave applied for disability insurance benefits and

supplemental security income. AR 119-31.[2] The Social Security Administration

denied Van Cleave's application. AR 62-64. Van Cleave requested

reconsideration, which was subsequently denied. AR 67-71. Van Cleave next

---

[1] Under Fed. R. Civ. P. 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue. This action survives the substitution. 42 U.S.C. § 405(g).

[2] All citations to "AR" refer to the appropriate page of the administrative record.

requested a hearing before an Administrative Law Judge (ALJ). AR 72-73. After the hearing, the ALJ issued a decision finding that Van Cleave was not entitled to benefits. AR 10-29. The Appeals Council denied Van Cleave's request to review the ALJ's decision. AR 1-3. Subsequently, Van Cleave requested that this court review the Commissioner's unfavorable decision. Docket 1.

## FACTS

Van Cleave was born on December 23, 1970. Van Cleave completed high school, but states that she has a learning disability related to her reading comprehension.[3] AR 37. Van Cleave has four children and has been married to her husband since 1999. AR 38-39.

Van Cleave has an extensive but sporadic work history, primarily consisting of service industry positions such as waitress, cook, and cashier. AR 184-202. Most recently, she held a telemarketing position at Stream International, Inc. In 2007, Van Cleave received total wages of $21,523.21 from Stream, and from January to September 2008 she made $18,556.94. AR 151. She was terminated from Stream on September 24, 2008, and has not worked since then. AR 15. Currently, Van Cleave receives occasional child support payments for her two older children and food stamps, and she relies on her husband's social security retirement income. AR 239.

---

[3] Van Cleave does not claim to be disabled as a result of this learning disability, and there is no evidence in the record related to her learning disability or any functional limitations stemming from it.

Van Cleave has a history of fibromyalgia[4] and fatigue, and has taken various pain medications to relieve her symptoms. AR 47. Her primary care provider is Karen Pearson, a certified physician assistant. Van Cleave also alleges that she has back pain and a tailbone injury from a fall in 1991. AR 48, 267. X-rays of Van Cleave's spine show mild degenerative joint disease. AR 270, 271. Additionally, Van Cleave reports struggling with depression, *see* AR 276, 285, and memory issues. AR 207-08. Van Cleave previously applied for social security disability benefits in 1995, 1997, and 2003. AR 46.

## ALJ DECISION

After a telephonic hearing in which Van Cleave was represented by counsel, the ALJ issued an unfavorable decision. The ALJ applied the five-step process for determining disability. *See* 20 C.F.R. § 404.1520. In doing so, the ALJ found that Van Cleave had not engaged in substantial gainful activity since September 24, 2008. The ALJ found that Van Cleave's fibromyalgia was severe within the meaning of the regulations, but that Van Cleave's medically determinable impairments of depression and back and neck pain were nonsevere. AR 15-17. After determining that Van Cleave's fibromyalgia did not meet or equal a listed impairment, the ALJ concluded that Van Cleave had the residual function capacity (RFC) to perform light work with some limitations.

---

[4] Fibromyalgia is a "syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances; the cause is unknown." *Stedman's Medical Dictionary* 725 (28th ed. 2006).

3

AR 17. In making the RFC determination, the ALJ found that Van Cleave's statements regarding the limiting effects of her symptoms were not entirely credible. AR 18-22. Based on her RFC, the ALJ determined Van Cleave could perform her past relevant work, or alternatively that she could perform other jobs existing in the national economy. AR 22-24. Accordingly, the ALJ concluded that Van Cleave was not disabled. AR 24.

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)). The court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined

the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

In determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole, the court reviews the entire administrative record and considers six factors: (1) the ALJ's credibility determinations; (2) the claimant's vocational factors; (3) medical evidence from treating and consulting physicians; (4) the claimant's subjective complaints relating to activities and impairments; (5) any third-party corroboration of claimant's impairments; and (6) a vocational expert's testimony based on proper hypothetical questions setting forth the claimant's impairment(s). *Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

## DISCUSSION

Van Cleave first asserts that the ALJ erred by not considering her impairments in combination with each other.[5] Second, Van Cleave argues that the ALJ erred in determining her RFC because (1) the ALJ improperly determined that her subjective complaints of pain were not fully credible; (2) the ALJ did not properly weigh her husband's statement; and (3) the ALJ gave too much weight to state agency physicians and not enough weight to Van Cleave's treating physician assistants. Finally, Van Cleave contends that the ALJ's hypothetical questions to the vocational expert (VE) were defective because they failed to account for her subjective symptoms.

## I.      Step Two

At step two, Van Cleave must establish whether she has a medically determinable physical or mental impairment that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("It is the claimant's burden to establish that [her] impairment or combination of impairments are severe.") (citation omitted). A severe impairment must "significantly" limit the claimant's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1521(a), such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking,

---

[5] It is unclear at which step Van Cleave contends this alleged error occurred. *See* Docket 10 at 10. Because Van Cleave's discussion refers to the ALJ's step two decision, the court will address this argument at step two.

understanding, remembering simple instructions, using judgment, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1)-(6).

The ALJ found that Van Cleave's fibromyalgia was a severe medically determinable impairment,[6] but that Van Cleave's depression and degenerative joint disease were nonsevere. AR 15-17. The ALJ determined that Van Cleave's depression was nonsevere when evaluated using the four functional areas set out in the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00C (assessing functional limitations of medically determinable mental impairments using the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). The ALJ also considered Van Cleave's degenerative joint disease, but based on x-rays and functional tests showing only mild limitations, the ALJ determined Van Cleave's back and neck pain to be nonsevere. AR 17. Van Cleave has not made any argument that the ALJ erred in determining that her depression and degenerative joint disease are nonsevere, and those determinations are supported by substantial evidence in the record as a whole. Therefore, the ALJ

---

[6] Van Cleave mistakenly asserts that "[t]he Claimant's fibromyalgia was then analyzed by the ALJ and dismisses [sic] that as being non-severe." Docket 10 at 10. Although the ALJ found that Van Cleave's fibromyalgia did not meet or equal a listed impairment, AR 17, the ALJ *did* find Van Cleave's fibromyalgia to be a severe impairment. AR 15.

did not err at step two in determining that, while Van Cleave's fibromyalgia was a severe impairment, her depression and degenerative joint disease were not.

Van Cleave contends the ALJ erred by not considering her impairments in combination with each other. But Van Cleave does not show how that would have changed the ALJ's conclusion at step two, nor does Van Cleave show how the alleged failure led to error at any other step.[7] Van Cleave does not present any argument or point to any evidence in the record showing that either her depression or her mild degenerative joint disease, in combination with her fibromyalgia, would limit her ability to work more than she was limited by her fibromyalgia. *See Banks v. Massanari*, 258 F.3d 820, 825 (8th Cir. 2001) (evaluating a combination of impairments by asking if "these additional disabilities . . . significantly limit [the claimant's] ability to work"). There are no symptoms of depression present in the record, and any back pain stemming from her nonsevere degenerative joint disease would not create any additional limitation on Van Cleave's ability to work that is not already encompassed by her severe fibromyalgia. Based on the record, the ALJ did not err at step two.

---

[7] Specifically, Van Cleave does not argue that her combination of impairments would meet or equal a listed impairment at step three, leading to a presumption of disability. Additionally, the ALJ discussed all of Van Cleave's impairments in the RFC determination.

## II.    RFC

Before an ALJ moves to step four, the ALJ must determine the claimant's
RFC. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC "is the most [she] can still do
[in a work setting] despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The
RFC assessment is an indication of what the claimant can do on a "regular and
continuing basis" given the claimant's disability. 20 C.F.R. § 404.1545(b). " 'The
ALJ should determine a claimant's RFC based on all the relevant evidence,
including the medical records, observations of treating physicians and others,
and an individual's own description of his limitations.' " *Lacroix v. Barnhart*, 465
F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066,
1070 (8th Cir. 2004)). The RFC must include the limitations from all medically
determinable impairments, regardless of whether they are considered severe.
SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and
restrictions imposed by all of an individual's impairments, even those that are
not 'severe.' ").

In determining Van Cleave's RFC, the ALJ considered Van Cleave's injury
to her coccyx and sacrum after falling on ice in 1991, fibromyalgia, depression,
pain in her neck and back, fatigue, frequent headaches, and muscle pain and
tingling.[8] AR 18. The ALJ concluded that Van Cleave "has the [RFC] to perform

_____

[8] To the extent that Van Cleave's step two argument regarding the ALJ's
alleged failure to consider her impairments in combination with each other
could lead to an error at the RFC stage, the ALJ appears to have considered all

9

light work . . . except that she can only occasionally climb, balance, stoop, kneel, crouch, or crawl. Furthermore, she should avoid concentrated exposure to cold, heat and hazards." AR 17.

### A.   Credibility

Van Cleave argues that the ALJ did not properly assess her credibility with respect to her subjective complaints of pain. Docket 10 at 11-15. "[W]hen evaluating a claimant's credibility, in addition to considering the absence of objective medical evidence to support complaints of pain, an ALJ should consider a claimant's reported daily activities, the duration, frequency and intensity of his or her pain, precipitating and aggravating factors, medication, and functional restrictions." *Steed v. Astrue*, 524 F.3d 872, 875 n.4 (8th Cir. 2008) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *see* 20 C.F.R. § 404.1529(c)(3). "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as [the ALJ] acknowledged and examined those considerations before discounting [Van Cleave's] subjective complaints." *Id.* at 876 (internal quotation omitted). An ALJ must make express credibility determinations detailing reasons for discounting a claimant's subjective complaints of pain. *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010). An ALJ's credibility determination is entitled to deference because the ALJ is in a

of her alleged symptoms from her impairments in the RFC discussion, and Van Cleave does not point to any impairments that were left out of the RFC.

10

better position than a reviewing court to gauge credibility. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

The ALJ stated that "[Van Cleave's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Van Cleave's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." AR 18. The ALJ observed that the objective medical evidence was not consistent with respect to Van Cleave's pain. AR 18-19 (noting that, although Van Cleave was at times diagnosed with pain or physical limitations, at other times she registered no pain and normal range of motion, sensitivity, and strength). Next, the ALJ addressed Van Cleave's activities of daily living and found them inconsistent with her allegations of disabling pain. AR 19 (referencing evidence that Van Cleave was involved in scout meetings, family events, bowling, fishing, yard work, daily walks, driving a car and a boat, and daily computer use). Additionally, the ALJ looked at Van Cleave's treatment history, and concluded that there was evidence showing Van Cleave had not been compliant when taking her medication, but that when she did take her medication, it was successful in controlling her symptoms. AR 19-20. The ability to successfully control pain with medication can be inconsistent with an allegation of disabling pain. *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009). If an impairment can be controlled through treatment or medication, it cannot be considered disabling. *Id.* (citing *Kisling v. Chater*, 105 F.3d 1255,

11

1257 (8th Cir. 1997)). The ALJ also noted that Van Cleave did not see a
specialist at any time. AR 19.

Of particular concern to the ALJ were a number of statements made by
medical professionals who interacted with Van Cleave, which the ALJ concluded
undermined Van Cleave's credibility with respect to the disabling nature of her
pain. The ALJ noted that one of Van Cleave's physical therapists reported that
he questioned Van Cleave's motivation to get better, that Van Cleave made it
clear that her goal was to receive disability benefits, and that physical therapy
was "simply one of the steps that she has to complete" to get benefits. AR 20,
324. Similarly, the ALJ discussed that Van Cleave did not feel she needed to be
seen every month, but that her lawyer advised her to make more appointments.
AR 20. The ALJ also discussed the results of Van Cleave's functional capacity
evaluation, in which Terry Nelson, a physical therapist, found that Van Cleave's
range of motion improved during distraction activities, indicating that Van
Cleave was trying to artificially control the test results. AR 19, 373-75.
Combined with Van Cleave's past applications for benefits, the ALJ concluded
that Van Cleave's "motivation for seeking treatment may have less to do with
improving her condition and more to do with obtaining benefits." AR 20.

With respect to Van Cleave's work history, the ALJ found that Van Cleave
had been experiencing symptoms at approximately the same level of severity
prior to September 24, 2008, but that her symptoms had not prevented her

from working in the past. *Id.* Because of inconsistent statements in the record, the ALJ also questioned whether her termination from Stream was actually due to drowsiness as a side effect of her medication. *Id.* Based on consideration of the objective medical evidence, Van Cleave's daily activities, the effectiveness and side effects of Van Cleave's medication, Van Cleave's physical therapy, Van Cleave's work history, and statements from medical professionals questioning the veracity of Van Cleave's disability, the ALJ concluded that Van Cleave's allegations of pain were not fully credible.

Van Cleave contends that the ALJ's credibility determination was flawed because the ALJ "cherry-picked the good days out of the medical records." Docket 12 at 2 (citing SSR 12-2p, which emphasizes a longitudinal view of fibromyalgia because symptoms can "wax and wane"). Specifically, Van Cleave maintains that she attended but did not participate in activities such as bowling, cross-country skiing, or boating, and that the other determinations by the ALJ misinterpret the record to make her daily activities seem more significant. Van Cleave also takes issue with the ALJ's reliance on certain elements of Van Cleave's daily activities, such as sewing, playing cards, and visiting with friends, because that information was provided in July of 2009. But even if Van Cleave did not ski or bowl herself, going to those activities reveals a higher level of daily activity than she claims to have in her disability application. The record contains instances in which Van Cleave or others stated

13

she was sore or fatigued, but that information does not compel the conclusion that Van Cleave's subjective complaints of disabling pain are fully credible. Overall, the ALJ's findings about Van Cleave's daily activities are supported by multiple sources throughout the record.

Van Cleave argues that the ALJ improperly viewed Van Cleave's conflicting statements about her termination from Stream as evidence that Van Cleave lacked credibility. The ALJ observed that Van Cleave did not mention that her medication made her fall asleep with Pearson, nor did she request any change of medication from Jeff Schild, another physician assistant from whom she received treatment. Failure to mention such a side effect to a treating medical professional can fairly be interpreted as a sign that a claimant's current statements about that side effect are not fully credible.

Finally, Van Cleave contends that the ALJ improperly relied on a lack of objective evidence for an impairment, fibromyalgia, that is not easy to support with objective medical evidence. Docket 10 at 14-15. Contrary to Van Cleave's contention, the ALJ did not *exclusively* rely on a lack of objective medical findings to reach the conclusion that Van Cleave was not disabled. The ALJ noted that frequently, Van Cleave showed only mild limitation in range of motion tests, that she was able to sense light touch on her extremities, that her motion, gait, and other movements were frequently observed to be normal, and that she showed no signs of pain at the end of physical therapy. AR 19. This

14

evidence is inconsistent with Van Cleave's claims of disabling pain and was properly considered by the ALJ as one element in evaluating Van Cleave's credibility.

Although the ALJ did not explicitly mention the *Polaski* factors, the analysis applied by the ALJ included a number of those factors, and is supported by substantial evidence in the record as a whole. Van Cleave has not shown that the ALJ erred in evaluating her credibility with respect to her subjective complaints of disabling pain.

### B.    Third-Party Evidence

Van Cleave argues that the ALJ did not make an express credibility finding when discounting the corroborating statement supplied by her husband, and that this failure amounted to reversible error. Docket 10 at 15. With respect to the information provided by Edward Van Cleave, the ALJ wrote:

> Although this statement is from a non-medical source, it has been considered in accordance with Social Security Ruling 06-03p to show the severity of the individual's impairments and how the severity may affect the claimant's ability to function. The statement in question does corroborate the claimant's testimony regarding daily activities and limitations; however, the undersigned gives it little weight as it is cumulative evidence outweighed by other medical and non-medical evidence as discussed above, and does not support the limitations alleged.

AR 22. When lay witness testimony merely corroborates a claimant's testimony regarding activities, and conflicts with the medical evidence, the ALJ is not required to make credibility findings before discounting the lay witness

15

testimony. *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996). Edward Van Cleave's statement is merely corroborative; in fact, it is virtually identical to the function report submitted by Van Cleave herself. *Compare* AR 176-83 (Edward Van Cleave) *with* AR 203-11 (Toni Ann Van Cleave). The ALJ discussed why the function report submitted by Van Cleave herself conflicted with the medical and other evidence in the record. Accordingly, the ALJ was not required to make an explicit credibility finding before giving little weight to Edward Van Cleave's corroborating statement.

### C.    Medical Source Weight

An ALJ must evaluate every medical opinion, regardless of its source. 20 C.F.R. § 404.1527(c). Treating source medical opinions can be entitled to controlling weight, and if a treating source medical opinion is not given controlling weight, an ALJ must give good reasons for the weight given to that opinion. 20 C.F.R. § 404.1527(c)(2). In determining the weight to give a medical opinion, an ALJ should consider, among other factors, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion, and the specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6).

"Medical opinions are statements from physicians and psychologists or other *acceptable medical sources* . . . ." 20 C.F.R. § 404.1527(a)(2) (emphasis

16

added). "Acceptable medical sources are (1) Licensed physicians (medical or osteopathic doctors); (2) Licensed or certified psychologists . . . ; (3) Licensed optometrists . . . ; (4) Licensed podiatrists . . . ; and (5) Qualified speech-language pathologists . . . ." 20 C.F.R. § 404.1513(a)(1)-(5). In contrast, other medical sources may show the severity of impairments and the impact of impairments on the ability to work, but cannot establish an impairment. 20 C.F.R. § 404.1513(d). Other sources include medical sources that do not meet the definition of an acceptable medical source, including physician assistants and therapists. 20 C.F.R. § 404.1513(d)(1).

Based on the medical records, Van Cleave had the most extensive treatment relationship with Pearson. *See* AR 361 (stating that Pearson saw Van Cleave beginning in 2001 and in 2008 for fibromyalgia). Pearson is a certified physician assistant, *see* AR 354, qualifying her as an other medical source. Schild is also a certified physician assistant. *See, e.g.*, AR 357. His treatment relationship with Van Cleave is not as extensive as Pearson's, and began in January 2011. Schild is not qualified to give a medical opinion as an acceptable medical source and instead qualifies as an other medical source.

Beginning in January 2010, Van Cleave received physical therapy at CNOS, a clinic in Dakota Dunes, South Dakota, on Pearson's referral. AR 315-329. Van Cleave's records from CNOS are signed by Kip Chesmore and Jennifer Davis, both physical therapists. Van Cleave also received a functional capacity

17

evaluation on August 4, 2011, from Terry Nelson. Nelson is also a physical therapist. AR 372. As with physician assistants, physical therapists are not acceptable medical sources, but do qualify as other medical sources.

Van Cleave was examined one time by Thomas Olson, a physician who performed the examination for South Dakota Disability Determination Services. AR 267-69. Van Cleave's file was also reviewed by Doctors Whittle and Entwistle, both state agency physicians. AR 287-94, 311. Dr. Olson, Dr. Whittle, and Dr. Entwistle are the only physicians with opinions on Van Cleave's physical impairments in the record. Doctors Olson and Whittle diagnosed Van Cleave with fibromyalgia but opined that she could perform light work. AR 268, 287. Dr. Entwistle affirmed Dr. Whittle's assessment. AR 311.

Van Cleave claims the ALJ erred when determining her RFC by giving too much weight to the opinions of the state agency medical experts and too little weight to the opinions of Pearson and Schild. Docket 10 at 16-22. Although the opinions of Pearson and Schild are useful in developing a picture of Van Cleave's impairments over time, they are not qualified to provide acceptable medical opinions. In fact, Pearson specifically stated that she was not comfortable with or qualified to complete the forms sent to her as part of Van Cleave's benefits application. AR 354. Because Pearson and Schild are not acceptable medical sources, their opinions are not entitled to controlling weight.

Van Cleave also asserts that the ALJ did not properly weigh the opinions of Pearson and Schild on the issue of her pain and its impact on her ability to work. All of the medical opinions in the record recognize that Van Cleave suffers from fibromyalgia. The ALJ gave great weight to the opinions of the state agency physicians because the ALJ determined those opinions were consistent with the substantial evidence in the record and the findings of Dr. Olson. AR 21. The ALJ also gave some weight to the functional capacity evaluations of Dr. Olson and Nelson because they were consistent with the opinions of the state agency physicians, each other, and the substantial evidence in the record. AR 21-22.

In determining Van Cleave's credibility with respect to her disabling pain, the ALJ considered the records provided by both Pearson and Schild. AR 18-20. Those records form the basis for part of the ALJ's discussion on Van Cleave's activities of daily living. The ALJ also considered the observations of Pearson and Schild with respect to Van Cleave's pain, range of motion, and functioning. Additionally, the ALJ noted that neither Pearson nor Schild imposed any functional restrictions on Van Cleave that would be inconsistent with the ability to perform a range of light work. AR 22. The ALJ properly considered the opinions of Pearson and Schild, together with the other evidence in the record and the additional medical opinions, in determining the severity of Van Cleave's pain. The ALJ's RFC determination is based on properly weighted opinion and is supported by substantial evidence in the record as a whole.

19

### III.  Step Five

Van Cleave asserts that the ALJ formulated improper hypothetical questions for the VE at step five, which cannot constitute the substantial evidence needed to carry the Commissioner's burden at that step. Van Cleave does not dispute the ALJ's finding that she is capable of performing her past relevant work as a cashier or telephone solicitor based on her RFC. AR 22. Because the court has concluded that the ALJ did not err in determining that Van Cleave has the RFC to perform her past relevant work, and Van Cleave does not challenge the ALJ's decision at step four, Van Cleave is not disabled and the ALJ was not required to move on to step five. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."); 20 C.F.R. § 404.1560(b). But if the court were to reach that issue, it finds that the ALJ properly discounted Van Cleave's subjective complaints of pain based on her lack of credibility. Therefore, the ALJ's hypothetical questions were not defective as Van Cleave claims.

### CONCLUSION

The ALJ's decision is supported by substantial evidence in the record as a whole. The ALJ did not err in considering Van Cleave's impairments, assessing Van Cleave's credibility, weighing the statements from Van Cleave's husband or medical providers, or formulating hypothetical questions for the VE. Accordingly, it is

ORDERED that the Commissioner's decision denying Van Cleave's claims for benefits is affirmed.

Dated February 20, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

21